Cox, J.
The relator in this case files his petition in mandamus, setting forth that at the October election, 1885, in the county of Hamilton, he, with three others, was duly elected by a plurality of the legal votes of said county to the office of Senator, to the General Assembly. That the defendants, the canvassers, on the 19fch of October began to canvass and abstract the returns of said election made to said clerk, in order to ascertain and declare the result of said election, but they have not yet abstracted all the votes of all the precincts- in said county, nor have they as yet declared the result of said canvass and abstract, nor certified nor signed the abstract of said votes, nor deposited the same in the office of said clerk: and he avers that defendants have failed to canvass and- abstract the returns of said election according to law, and are still failing and refusing so to do. That they have canvassed and abstracted a large number of votes which do not appear on the legal returns of said election returned to said clerk, and credited the same.to the Democratic candidates. To support this allegation, a number of specific acts'are alleged on the part of the clerk and canvassers. Defendant has moved to strike out *141 nearly all these specific averments, on the ground that they are irrelevant, immaterial, and furnish no ground for the relief asked, and this motion has been treated and argued by both parties as a demurrer to each and every specification, in order that upon the threshold of the case, the question of the jurisdiction of the court to grant the relief asked may be decided. . ■
It is claimed by defendant, that mandamus will not lie to compel the canvassing board to count' the votes and issue the certificate, as asked for, for the reason:
First, that the canvassing board in counting the votes and declaring the result, acts as a quasi judicial body, and that it is the sole judge of what are and what are not legal returns, and that its decision can not be controlled by mandamus; and, second, that the court can not proceed by mandamus to examine into the acts of the canvassing board and require them to_ count the votes and grant a certificate, because there was a plain and adequate remedy at law. That each house of the Legislature was made by the Constitution, Article 2, Section 6, the judge of the election returns and qualifications of its own members. And by Sec. 3003, Revised Statutes, the proper place to inquire into these irregularities was by contest in the Senate.
• Let us, then, inquire, first, what is the position of the canvassing board. Is it a ministerial or judicial body ?
We had supposed that this qustion was so well settled as no longer to be a subject of debate. The doctrine that canvassing boards and return judges are ministerial officers, possessing no discretionary or judicial powers, is settled in nearly, or quite, all the States. See McCrary’s Election Law, Section 84, and cases there cited.
Their duties are purely ministerial, and extend only to the casting up of the votes and awarding the certificate to the person having the highest number; they have no judicial power. McCrary, Section 81.
Our Statute, Section 2980 and following, fully sets forth t^eir duties.
On the 6th day after the election, or sooner, in case the returns are made, the clerk of the court of common pleas, taking *142 to his assistance two justices of the peace of the county, shall proceed to open the returns made to his office and make abstracts of the votes in the following manner :
First — Upon a single sheet an abstract of the vote for Governor and other State officers.
Second — And, upon another sheet, an abstract of votes for Governor and others.
Third — And, upon another sheet, an abstract of votes for Governor, State and other officers, and Representatives and Senators to the General Assembly.
R. S. 2981. The clerk and justices shall not receive any paper as a poll-book of any precinct unless it be delivered at the cler’ks office by one of the judges of the election held in such precinct; and in making the abstract of votes, they shall not decide on the validity of the returns, but shall be governed by the number of' votes stated in the pool-books; and they shall certify and sign the abstracts, and deposit the same in the office of the clerk. By Sec. 2982, after such deposit with the clerk, he is required to make duplicate copies, under the seal of his office, inclose and seal the same, and indorse a certificate of the votes for officers named in title of Section 2980, and transmit the same by mail to the Secretary of State at Columbus. By section 2995, the clerk is required without fail to give a certificate to any elected candidate on demand.
If these statutes were not clear as to the purely ministerial character of this board, the supreme court has put it beyond the possibility of a doubt in the case of Ingerson v. Berry, 14 O. S., 322, and in the case of The State ex rel. Campbell v. Foster, Governor, 38 O. S., 603, where the court say, “ We fully concede that the duties of the defendant (the canvassing board) were ministerial in their nature.”
The second question is, can the court by mandamus examine into the acts of the canvassing board, and require them to correctly count the votes, and give a certificate to the person legally entitled thereto? By Sec. 6741~ R. S., mandamus is defined to be a ‘ writ issued in the name of the State to an inferior tribunal, a corporation, board or person; commanding the performance of an act which the law specially enjoins -as a duty resulting from an office, trust *143 or station. Sec. 6742 : And although it may require an inferior tribunal to exercise its judgment, or to proceed to the discharge of any of its functions, it can not control judicial discretion. Sec. 6744: “ The writ must not be issued in a case where there is a plain and adequate remedy in the ordinary course of law.” That these defendants are a board having duties to perform which the law specially enjoins as a duty resulting from an office, trust or station, we think is clear, and the supreme court has said in the case of Ingerson v. Berry, 14 O., 322, that they saw “ nothing in-the intrinsic nature of the duty, nor in the character of the office or station, to prevent the enforcement of its performance by mandamus in a proper case.” And so in the case of the State ex rel. Campbell v. Foster, in 38 O. S., 602, the supreme court, without in any way questioning this right so to do, proceeded to hear a case in mandamus against the Governor and Secretary of State, as the State Canvassing Board, on the vote for member of congress.
But it is claimed by defendant that mandamus will not lie, because there is a plain and adequate remedy at law afforded to relators by a contest before the Senate. To determine whether relator has a remedy at law by contest, let us see what he demands by his < petition. It is simply that defendants shall proceed to count the legal returns, and award a certificate to him if it be 'found on such count that he has a plurality of votes. This is not an application “ to contest the right of a person declared duly elected to the office of senator,” for which section 3003, revised statutes, provides. It differs widely from a contest. If relator has received a majority or plurality of votes, it is his right to have that declared and certified. It is the muniment of title to the office which he seeks, and not the office itself. It is made by section 24, R. S., the prima facie evidence of his right to a seat in the Senate, and, until it is awarded to him or some one else, no contest can be instituted in that body. The awarding of that certificate, is preliminary to all, or any proceeding in the Senate. The Senate, on a contest, can not award it to him. Clark v. McKean, 7th Bush., 523. But the Senate may award the office to him on proper proof, whether he has, or has not this certificate. If relator is entitled to the certificate, it should be given to him by these *144 defendants, for it has a value of great importance to .him, as giving him a key to the door of the Senate, éntitling him prima facie to the right to a seat, and if that right be contested then the burden of proof is upon contestant.'
There is no adequate remedy, nor indeed any remedy at law, by which the relator can obtain this certificate (if the canvassers refuse to declare in his favor) unless it be the writ of mandamus so ordering. It in nowise interferes with the action of the Senate in determining, either by a contest or otherwise, the election returns and qualifications of its members. There is, in fact, no Senate to organize until some persons, having certificates as the result of an election by the people, present themselves to organize that body. And after its organization by those holding certificates of election, the Senate may nevertheless go behind the election return and certificate, and determine that the holder was not elected, or even that, though elected,- he was not qualified to hold a seat in that body.
We hold, therefore, that mandamus is a proper remedy to be resorted to, to compel the defendants to properly canvass, abstract and certify the returns of the election at which relator was a candidate, and if he has received a majority or plurality of votes, to so certify, and give him a certificate on demand. The doctrine, we think, is not controverted by any decision of the supreme court of this State, but is in accordance with the principle announced by that court in the following well considered cases: Ingerson v. Berry, 14 O. S., 322; State ex rel. Goss v. Randall, 35 O. S., 64; State ex rel. Campbell v. Foster (Governor) et al., 38 O. S., 603.
This latter case is very suggestive. It was an application by James E. Campbell, who claimed to have been elected a member of congress from the third district, for the allowance of a writ of mandamus against Governor Foster and the Secretary of the State, who are by law designated as the canvassing board, to compel them not to count certain votes in the returns from Clermont county given to H. L. Morey, and to compel them to award the certificate to him. The supreme court did not refuse to take jurisdiction on the ground that each house of congress was, by the constitution of the United States, *145 the judge of the election, return and qualification of its members, nor for the reason that the law provided an ample remedy by contest in the House' of Representatives, but without any doubt, hinted or expressed against their jurisdiction, proceeded at once to hear and dispose of the question as one of which they had full jurisdiction.
But the motion in this case goes further than to the jurisdiction of the court. It is to strike from the petition a large number of the averments, on the ground that they are immaterial, irrelevant, and furnish no ground for the relief sought.
Let us examine what these averments are, which are denominated immaterial, irrelevant, and as not furnishing ground for relief.
They are in brief as follows: It is charged that defendants, in canvassing the votes, are canvassing, abstracting and crediting to Democratic candidates votes from papers which are not the legal returns from precincts described, and which they have no authority by law to canvass as the legal returnsthat in precinct A, of the fourth ward, the papers purporting to be returns are forged, altered, and spurious, and do not represent the votes cast in said preciniet, and said facts are evidenced on the papers; that the paper purporting to be a poll-book shows 654 names as having voted, whereas the tally shows that 996 votes were cast, and that defendants have canvassed and abstracted from said papers 996 votes as to the office of senator, for which relator was a candidate, of which they have given 926 votes to his oppbnents; that in precinct F, of the ninth ward they have canvassed and abstracted and credited to the Democratic candidates 191 votes and 45 votes to the Republican candidates, from papers which are not the returns of votes cast at said precinct; that the paper purporting to be a tally-sheet contained no tallies, and no statement of votes for any candidate cast at said election, nor was it signed' by any of the judges or clerks of said election.
As to precinct E, of eighteenth ward, defendants have canvassed and abstracted as the votes cast at said election, and credited 215 votes for the Democratic candidates, and 117 votes . for the Republican candidates from papers, which are not the lawful returns of said election; that the papers from which *146 said abstract was made were not signed by the minority judge of the election, because of frauds at said election, and because the papers did not contain the true returns; that said papers were not returned to said clerk and delivered to him by one of the judges of said election in pursuance of law; that the vote cast at said election was canvassed on the night thereof by only two of the judges of said election, and when so canvassed or 'counted, the poll-books an'd tally-sheets were not delivered to the city clerk and county clerk as required by law, but the same, after having been signed by the two judges and two clerks, were placed by them inside the ballot-box, said poll-books and tally-sheets being without cover and not under seal, containing the ballots cast at said election, and which said box, having had the hinges broken off the lid thereof, was thereupon tied with a rope and delivered to an officer of police, who conveyed the said box containing said poll books and tally-sheets to the Central Police Station of. Cincinnati; and said judges and clerks of said precinct, when they had thus signed said poll-books and tally-sheets and deposited the same in said box as aforesaid, thereupon adjourned without day, and without further order as to the disposition of said papers and returns. On the 19th day of October, 1885, one of the judges took the papers from the box and kept possession of the same, uncovered and unsealed, from that day until the 22d of Octobef, when he placed the same under cover and sealed and delivered it to the county clerk.
As to precinct D of the nineteenth ward, the allegations of the relator are, that defendants have canvassed and credited the Democratic candidates 283 votes and fifty-two to the Republican candidates, from papers which are not the lawful returns of said election; that on the night of the election, at the closing of the polls, the judges and clerks of said precinct refused to proceed with the counting of the ballots cast at said voting place, and allowed the box containing said ballots to remain unopened, and instead of proceeding with the count of ballots cast, they abandoned the box and left it in the custody of parties unknown to the relator; that the following night, twenty-eight or twenty-nine hours after the closing of the polls, the judges of said precinct returned to the voting place, *147 and undertook to count the ballots cast at said election; that the box, which was then at the voting place of said precinct, was opened, and the ballots therein counted'by said judges and clerks, and the return made to said county clerk, is the return of the vote and ballots then found in said ballot-box ; but this relator denies that said ballot-box is the same that was used to receive the votes of electors on the day of said election in said precinct, and denies that the said ballot-box was in the same condition in which it was left at the closing of said election polls, and further charges that if the box was the same box which was used at said precinct the preceding .day to receive the ballots cast, that the same had been tampered with, .and a large number of votes placed therein since the closing of the polls on the night of election; that the said tally-sheets made at the time aforesaid and returned to said clerk show forty-three votes in excess of*the number of votes cast at said election by the legal electors .thereof, as shown by the poll-hook of said precinct so returned to said clerk, which said excess of votes were fraudulently and unlawfully placed in said box, whilst the same was out of the possession of the judges, and in the custody of persons unauthorized by law to have the same, and it is impossible to ascertain and determine the votes actually cast by the legal electors for the several candidates for the office of senator.
This truly formidable array of charges of official delinquency and criminal disregard of law, is by the pleading of defendants, for the purposes of this motion, admitted to be true, and the only answer is that they are irrelevant and immaterial, and furnish no ground for relief. We can not conceive them to be such — if they be true, relief should be granted against them, if in the power of the court. The duties of the defendants are plainly prescribed by law, and if these specifications set forth wherein they are violating these duties, they should not be stricken out.
What are those duties ? Section 2980, R. S., provides that on the sixth day after the election, or sooner, in case the returns are made, the clerk of the court of common pleas, taking to his assistance two justices of the peace of the county, shall proceed to open the several returns made to his office, and *148 make abstracts of the vote in the following manner, etc. “ Section 2981 — The clerk and justices shall not receive any paper as a poll-book of any precinct, unless it be delivered at the clerk’s office by one of the judges of the election held in such precinct; and in making the abstract of votes, they shall not decide on the validiv of the' returns, but shall be governed by the number of votes stated in the poll-books; and shall certify and sign the abstract, and deposit the same in .■ the office of the clerk.”
What are these returns of election which they are thus to canvass and certify? Not, certainly, any paper purporting to be a return which may have been left, sealed or unsealed, in the clerk’s office, by a judge of election or any other person. But their character is fixed precisely by the statute, and the very form given. It is a statement by the officers of an election to the clerk of the court of common pleas', in accordance with law, of the number and names of persons who have voted in a particular precinct, with the number of votes cast for each of the candidates for the respective offices. It consists of a poll-book and a tally-sheet.
The poll-book contains the names of all .the persons who voted at the election, and' these names must be counted and the number set down at the foot, and certified to by the signatures of the judges and clerks in the manner provided by the statute. The tally-sheet should contain the names of the person voted for, and for what office, and the number of votes given for each candidate; and this,, too, must be added up, and certified to and signed by the judges and clerks. And the number of persons voting should correspond to the number of votes cast. The judges, by section 2961, shall, after so canvassing-the votes, and before they disperse, put under cover one of the poll-books, seal the same, and direct it to 'the clerk of the court of common pleas, and one of the judges, to be selected by the others, shall convey the same to the clerk, at his office, within three days from the day of election.
As to some of these precincts, nearly all of these plain, easily comprehended rules as to a proper return of an election are charged to have been violated, and while the statute provides that no election shall be set aside for w-ant of form in a *149 poll-book, provided it contain the substance, these charges go not only to the want of form, but to want of nearly every substantial thing going to make a correct legal return.
Now, although the performance of the dutiesjof the canvassers is ministerial, yet, as the supreme court says in 38 O. S., 604, State ex rel. v. Foster et al., “ the performance of ministerial duties requires the exercise of intelligence, sense and judgment. Ministerial duties must be performed correctly, and the fact that a ministerial officer performed his duty according to his judgment is of no avail if his duties are not correctly performed.” “A duty not correctly performed is not performed at all.”
As a result from what has been said, we state the general principles decided by us as follows :
First — That where a canvassing board is about to do some act of a ministerial nature, which is in violation of statutes prescribing its duties, the court, before the result is fully de-, dared, may, by a writ of mandamus, require it to proceed according to law. And the fact that a mode is prescribed by T^hich the election may be contested-, does not prevent the exercise of such jurisdiction. Nor is there any other “ plain and adequate remedy in the ordinary course of the law ” for the evil complained of. By no other judicial proceeding could the relator compel this board of canvassers to discharge its legal duty, or to furnish to him a certificate of his election, if on a legal and proper canvass he is entitled to it.
Second — That under the provisions of section'2981, revised statutes, “ the clerk and justices shall not receive any paper or a poll-book of any precinct unless it be delivered at the clerk’s office by one of the judges of election held in such precinct, and in making the abstract of the votes, they shall not decide on the validity of the returns, but shall be governed by the number of votes stated in the poll-book.” So far as regards these provisions, we are of the opinion that they'are mandatory in 'their nature and must be strictly complied with, and that the board is not authorized to receive or canvass any paper or poll-book unless so received.- And further, that when a return is so made, .on its face substantially in accordance with the law, it must be counted by them, though *150 they may be satisfied that there was gross fraud in the election itself, or on the returns thereof as made to the clerk.” [See dissenting opinion of Judge Cox.] And the court in a proceeding of this character can only require the board to canvass such returns so received in this manner, and that it can not any more than can such board, go behind such returns. All we can do is to require it to do what the law requires.
Third — That when it appears to the court that such board is canvassing as the return papers which are not such, being neither in form nor substance such as the statute provides for,, and not having been returned to the deck’s office by a judge of the election precinct, such action is in direct violation of the law and of the duty of the board, and the court may properly direct the board to omit it from the canvass.
Fourth — That if the poll-book and tally-sheet returned from any particular precinct, on their face show that the votes as stated in the tally-sheet aré substantially more in number than the number of votes cast, as given by the poll-book, that (at least) no greater number of votes on the tally-sheet should he counted than equals the number of votes on the poll-book. But inasmuch as great doubt exists as to what the law requires of the board in such a case, that is, whether the whole vote or return should be rejected, or if canvassed, in what manner it should be done, we do- not now finally dispose of this question, but reserve it for further consideration.
Fifth — Section 2961 provides that after one of the poll-books is sealed and directed to the clerk of the court, one of the judges shall convey the same.to the clerk at his office within three days from the day of the election. And section 2980 provides that “ on the sixth day after the election, or sooner in case the returns are made, the clerk of the court of common pleas, taking to his*>assistance two justices of the peace of the county, shall proceed to open the several returns made to his office.” Whether a return made by a judge of the election after the three days fixed by law in which it shall be so returned, and before the time at which the canvass by the terms of the statute is to commence, shall be canvassed by them, is not presented by this petition and motion, and, therefore, it is unnecessary to decide it. But to entitle such return to be *151 received and canvassed by such board; it must be returned before the time fixed for the commencement of the canvass, as the same is, by a fair interpretation of the law, to be made of the returns received at that time.
Sixth — That when a return, properly signed by two- of the judges and one of the clerks of an election precinct (they constituting a majority of the said election board), is filed by one of the judges of said precinct in the office of the clerk, within the time limited by law, this is probably a substantial compliance with the provisions of the statute. At all events, the court not being clearly satisfied that it was the duty of the clerk and justices to reject the returns so made and signed, they will not be required by the court to do so. State ex rel. Goss v. Randall, 35 Ohio St., 64.
In the light of these holdings of the court, the motion of the defendants to strike from the amended petition are disposed of as follows:
First — As to precinct A, fourth ward. This part of the motion is overruled on the ground that the allegations are that the poll-book from this precinct contained the names of but 654 persons, and that the board had canvassed 996 votes for the senate from that precinct, of which 926 were credited to all of the Democratic senators but John Brashears, who was credited with 926 votes when he had but 726 tallies; thus, according to the allegation of the petition, giving to all of the Democratic senators more votes than were cast at said elec-' tion, as shown by the poll-book.
Second — As to precinct F, ninth ward, the allegations sought to be stricken out are substantially that defendants have canvássed, abstracted and credited to relator 45 votes, and to the opposing candidates 191, from papers not the returns of the votes cast at said precinct at said election; that the paper purporting to be a tally-sheet contained no statement of votes cast for any candidate at said election, nor was the same signed by any of the judges or clerks of said election; and that said defendants made said canvass and abstract as aforesaid, without having any tally-sheet returned from said precinct, or any statement of votes cast at said election, as re *152 quired by law. Clearlj', under the ruling we have made, if such action has been had by the board, it was illegal, and the court can require it to be corrected, and the motion as to this should.be overruled.
Third — As to precinct E, eighteenth ward. The allegations as to this precinct, which the defendants ask to have stricken out, are, that the board credited 117 votes from said precinct to the relator and 213 votes to the opposing candidates. It is also alleged that many irregularities occurred in the counting of such votes by the judges; that the returns were placed by them in the ballot-box unsealed, and that the judges then adjourned, without any order as to the disposition of the returns ; that on October 19, one of the judges took said papers from the box, placed the same hnder cover and seal, and delivered them to the clerk on the 22d of October.
Under the view we have taken of the law on this matter, many of the allegations of this part of the amended petition are in our judgment, irrelevant, and can not be inquired into, and had the motion been confined to such points it would have been sustained. But as the allegation as to the time of the delivery of such returns to the clerk are material and relevant, and as the motion goes to the whole, it will also be overruled.
Fourth — As to precinct D, of the nineteenth ward — The allegations of this part of the petition are that the defendants canvassed fifty-two votes therefrom to the relator and 233 votes to the opposing candidates. It further charges that there were great irregularities in the counting of said votes, which, in our judgment, can not be considered; but as it avers that the board counted for such officers from the tally-sheets forty-three votes in excess of the number of votes as shown by the poll-book, the motion as to this is overruled.
Fifth — As to the precinct F, nineteenth ward — The amended petition alleges that in this ward the minority judge and clerk refused to sign the papers returned because they were not the true and complete returns of the votes cast at said election; and it further alleges that before the counting thereof, 103 votes had been abstracted from the box, and that there were many other irregular and illegal acts committed *153 by the two judges. On the ground stated hitherto, we think no relief, can be granted by the court in this proceeding on these allegations, and the motion as to this is sustained, but that these are questions to be settled on a contest of the election, should one be had.
Sixth — The motion seeks to have stricken from the petition all the allegations contained after line 204. These allegations are as to the counting by the defendants, in each of the precincts named, more votes from the tally-sheets than were' shown by the poll-books, and for the reasons before stated this motion is overruled.
Smith and Swing J. J. concurred.